RILEY SAFER HOLMES & CANCILA LLP
Yakov P. Wiegmann (CSB # 245783)
ywiegmann@rshc-law.com
Mishan R. Wroe (CSB # 299296)
mwroe@rshc-law.com
456 Montgomery Street, 16th Floor
San Francisco, California 94104
Telephone:     (415) 275-8550
Facsimile:     (415) 275-8551

PLEASE SEE SIGNATURE PAGE FOR COMPLETE
LIST OF COUNSEL

*Attorneys for Plaintiffs*
AMERICAN CIVIL LIBERTIES UNION
IMMIGRANTS' RIGHTS PROJECT and CENTER
FOR GENDER & REFUGEE STUDIES AT THE
UNIVERSITY OF CALIFORNIA HASTINGS
COLLEGE OF THE LAW

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION IMMIGRANTS' RIGHTS PROJECT and CENTER FOR GENDER & REFUGEE STUDIES AT THE UNIVERSITY OF CALIFORNIA HASTINGS COLLEGE OF THE LAW,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, an agency of the Department of Homeland Security,<br><br>Defendant. | Case No.  3:16-cv-06066-JSC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES AND LITIGATION COSTS**<br><br>Freedom of Information Act, 5 U.S.C. § 552<br><br>Hearing Date:   January 18, 2018<br>Time:               9:00 a.m.<br>Department:      Courtroom F, 15th Floor |

3:16-cv-06066-JSC

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
REASONABLE ATTORNEYS' FEES AND LITIGATION COSTS

1

# **TABLE OF CONTENTS**

I.      INTRODUCTION        ....................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................... 2

    A.      The 2009 ICE Parole Directive...................................................... 2

    B.      Plaintiffs Seek Information About the Directive and ICE's
        Role in Carrying Out the Directive ................................................. 3

    C.      Plaintiffs Filed Their Complaint After Receiving a Misleading
        Second Document Production from Defendant and Exhausting
        Administrative Remedies................................................................ 4

    D.      Impact of Disclosure of Documents Obtained by Plaintiffs .................................. 6

    E.      Plaintiffs' Counsel............................................................................. 6

III.    ARGUMENT ..................................................................................................... 7

    A.      Plaintiffs are Eligible and Entitled to an Award of Reasonable
        Attorneys' Fees and Litigation Costs............................................. 7

        1.      Having Substantially Prevailed, Plaintiffs Are Eligible
            for a Fee Award.................................................................. 8

        2.      Plaintiffs Are Also Entitled to a Fee Award Based on the
            Nature of the Records Sought, the Records Obtained, and
            the Parties Seeking the Records ........................................ 9

    B.      Plaintiffs' Attorneys' Fees are Reasonable ........................................... 10

        1.      A Summary of Plaintiffs' Claim ....................................... 10

        2.      Plaintiffs' Lodestar is Reasonable.................................... 12

            a.      Counsel's Hourly Rates are Reasonable ................. 12

            b.      The Number of Hours Claimed is Reasonable.............. 14

                i.      Plaintiffs' hours are fully-documented and
                    appropriate to the work completed.................... 14

                ii.     Plaintiffs are entitled to a fully compensatory
                    fee.................................................................... 15

IV.     CONCLUSION............................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*ACLU v. DHS*,
    No. 11-CV-3786, 2013 WL 6912685 (S.D.N.Y. Dec. 19, 2013) ......................................... 12

*Balla v. State of Idaho*,
    677 F.3d 910 (9th Cir. 2012) ............................................................................................ 14

*Blum v. Stenson*,
    465 U.S. 886 (1984) .......................................................................................................... 12

*Coordinated Pretrial Proceeding v. Exxon Corp.*,
    109 F.3d 602 (9th Cir. 1997) ............................................................................................ 14

*Cuneo v. Rumsfeld*,
    553 F.2d 1360 (D.C. Cir. 1977) .......................................................................................... 9

*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005) ............................................................................................ 15

*Davis v. City & County of San Francisco*,
    976 F.2d 1536 (9th Cir. 1992) .................................................................................... 11, 12

*Davy v. CIA*,
    550 F.3d 1155 (D.C. Cir. 2008) ........................................................................................ 10

*Deininger & Wingfield, P.A. v. I.R.S.*,
    2009 WL 2241569 *6 (E.D. Ark. 2009) ............................................................................ 10

*Diaz v. Schiltgen*,
    946 F. Supp. 762 (N.D. Cal. 1996) ..................................................................................... 4

*Fenster v. Brown*,
    617 F.2d 740 (D.C. Cir. 1979) ............................................................................................ 9

*Gates v. Deukmejian*,
    987 F.2d 1392 (9th Cir. 1975) .................................................................................... 11, 14

*Guam Soc. Of Obstetricians and Gynecologists v. Ada*,
    100 F.3d 691 (9th Cir. 1996) ............................................................................................ 15

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................................... 10, 14, 15

*Jarno v. Dep't of Homeland Sec.*,
    365 F. Supp. 2d 733 (E.D. Va. 2005) .................................................................................. 9

*Jean v. Nelson*,
    472 U.S. 846 (1985) ............................................................................................................ 4

*Judicial Watch, Inc. v. U.S. Dept. of Justice*,
    774 F. Supp. 2d 225 (D.D.C. 2011) .................................................................................... 9

*Kuzma v. IRS*,
    821 F.2d 930 (2d Cir. 1987) .............................................................................................. 11

*Long v. IRS*,
    932 F.2d 1309 (9th Cir. 1991) ............................................................................................ 8

*Marczak v. Greene*,
    971 F.2d 510 (10th Cir. 1992) ............................................................................................ 4

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ........................................................................ 15

*Oregon Natural Desert Assn. v. Locke*,
    572 F.3d 610 (9th Cir. 2009) ........................................................................... 8

*Perkins v. Mobile Housing Board*,
    847 F.2d 735 (11th Cir. 1988) ....................................................................... 14

*Read v. FAA*,
    252 F. Supp. 2d 1108 (W.D. Wash. 2003) ..................................................... 11

*Save Our Cumberland Mtns., Inc. v. Hodel*,
    857 F.2d 1516 (D.C. Cir. 1988) .................................................................... 11

*Sorenson v. Mink*,
    239 F.3d 1140 (9th Cir. 2001) ....................................................................... 15

*The Sierra Club v. United States Environmental Protection Agency*,
    75 F. Supp. 3d 1125 (N.D. Cal. 2014) ..................................................... 9, 10

*United States v. City & County of San Francisco*,
    748 F. Supp. 1416 (N.D. Cal. 1990) .............................................................. 12

**STATUTORY AUTHORITIES**

5 U.S.C. § 552(a)(4)(E) ............................................................................... 1, 7

5 U.S.C. § 552(a)(4)(E)(i) ............................................................................... 11

8 U.S.C. § 1182(d)(5) ...................................................................................... 2

8 U.S.C. § 1225(b)(1)(A)(i) ............................................................................. 2

8 U.S.C. § 1225(b)(1)(A)(ii) ............................................................................ 2

8 U.S.C. § 1225(b)(1)(B)(ii) ............................................................................ 2

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 .................................. 1

**RULES AND REGULATIONS**

8 C.F.R. § 1.2 .................................................................................................. 2

8 C.F.R. § 208.30(e) ....................................................................................... 2

8 C.F.R. § 235.3(c) ......................................................................................... 2

8 C.F.R. § 1235.6(a)(1) ................................................................................... 2

**LEGISLATIVE MATERIALS**

153 Cong. Rec. S15701-04 (daily ed. Dec. 14, 2007) .................................... 8

S. REP. NO. 93-854(1974) ............................................................................. 10

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
REASONABLE ATTORNEYS' FEES AND LITIGATION COSTS

1

## I.   INTRODUCTION

2        Plaintiffs are both non-profit entities who sought and obtained records pursuant to the

3 Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to evaluate whether Defendant, U.S.

4 Immigration and Customs Enforcement's ("ICE") detention practices contravene the public

5 interest, ICE's own Parole Directive, and the constitutional rights of asylum seekers.  After an

6 unnecessary delay—which included ICE issuing a second production of data in response to

7 Plaintiffs' FOIA request, which was actually the same, inadequate initial data production—

8 Plaintiffs filed this litigation.  After substantial settlement negotiations, Plaintiffs reached a

9 settlement agreement with ICE which requires ICE to produce the data Plaintiffs originally

10 requested, and additional documents.

11        As the prevailing parties, Plaintiffs are now entitled to their reasonable attorneys' fees and

12 litigation costs under FOIA, 5 U.S.C. § 552(a)(4)(E), which authorizes fees and costs when

13 documents are obtained by court order or under a catalyst theory.  Plaintiffs' lodestar for work on

14 the merits, consisting of drafting multiple complaints because of a misleading production of

15 documents from Defendant and engaging in lengthy and substantial settlement negotiations, is

16 $81,386.50, plus litigation costs of $1,102.92.[1]  Plaintiffs also request fees for this motion. The

17 lodestar for work on this motion to date is $4,708.50, to be supplemented for additional work on

18 reply.

19        As set forth below, the attorneys' fees Plaintiffs request are reasonable.  Their hourly rates

20 are well in line with the prevailing market rates for similar complex federal litigation.  The

21 number of hours for which compensation is requested is fully documented and reflects the careful

22 exercise of billing judgment, counsel's efficiency, and the burdens faced in this action.  Both the

23 success Plaintiffs achieved in this litigation and the purposes of the FOIA strongly support a fully

24
_____

25 [1] This lodestar excludes 36 hours spent by attorneys at the ACLU of Northern California as well as 82.5 hours spent
by two additional Riley Safer Holmes & Cancila LLP associates and one paralegal in an effort to charge for only the
26 absolutely necessary efforts, despite the fact these attorneys provided important oversight and assistance throughout
the litigation.  *See* Exhibit A to Declaration of Mishan Wroe in support of Plaintiffs' Motion for Reasonable
27 Attorneys' Fees and Litigation Costs ("Wroe Decl.").  The hours requested for time billed by Mr. Tan, Ms. Lee, and
Mr. Wiegmann are also listed in Exhibit B to Wroe Decl., for ease of reading.

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
REASONABLE ATTORNEYS' FEES AND LITIGATION COSTS

1    compensatory fee.

2    ## II.   FACTUAL AND PROCEDURAL BACKGROUND

3    ### A.  The 2009 ICE Parole Directive

4        Many detained asylum seekers are "arriving aliens," or noncitizens who are arrested upon

5    arrival at a port of entry or who are interdicted at sea.  *See* 8 C.F.R. § 1.2.  Under the Immigration

6    and Nationality Act, arriving noncitizens who are found, by an immigration officer, to lack

7    facially valid documents or to be inadmissible due to fraud are immediately returned to their

8    countries of origin through the "expedited removal" process—"unless the alien indicates . . . a

9    fear of persecution."  8 U.S.C. § 1225(b)(1)(A)(i).  Such persons are referred for an interview

10   with an asylum officer to determine if they have a "credible fear"—that is, a "significant

11   possibility" that they are eligible for asylum, withholding of removal, or relief under the

12   Convention Against Torture. 8 U.S.C. § 1225(b)(1)(A)(ii); (B)(iii), (B)(v); 8 C.F.R. § 208.30(e).

13   Noncitizens who establish a credible fear are then referred for a full removal hearing before an

14   Immigration Judge to adjudicate their claims for protection. 8 U.S.C. § 1225(b)(1)(B)(ii); 8

15   C.F.R. § 1235.6(a)(1).

16       Noncitizens who establish a credible fear of persecution are eligible for release from

17   immigration detention pursuant to the government's parole authority.  *See* 8 U.S.C. § 1182(d)(5);

18   8 C.F.R. § 235.3(c).  However, for years, ICE routinely detained arriving asylum seekers despite

19   their having established a credible claim to asylum and posing no danger or flight risk warranting

20   their imprisonment.  ICE faced widespread public criticism for its overbroad, arbitrary, and

21   unnecessary detention policies. A 2005 governmental study by the independent, bipartisan U.S.

22   Commission on International Religious Freedom (USCIRF) substantiated these criticisms and set

23   forth recommendations for significant reforms.[2]

24       ICE did not meaningfully act on USCIRF's recommendations until December 2009, when

25   it issued ICE Directive 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of

26

27   [2] *See* USCIRF, *Report on Asylum Seekers in Expedited Removal, Vol. I: Findings & Recommendations* 60-62, 67-68 (Feb. 2005), http://www.uscirf.gov/sites/default/files/resources/stories/pdf/asylum_seekers/Volume_I.pdf.

28

1  Persecution or Torture ("the Parole Directive").[3]  The Parole Directive instructs that "when an

2  arriving alien found to have a credible fear establishes to the satisfaction of [ICE] his or her

3  identity and that he or she presents neither a flight risk nor danger to the community, [ICE]

4  should"—absent "exceptional, overriding factors"—"parole the alien on the basis that his or her

5  continued detention is not in the public interest."[4]  The Parole Directive also established

6  procedures for documenting, reviewing, and reporting on parole decisions.[5]

7      The Parole Directive reflects the agency's recognition that there is no public interest in

8  detaining *bona fide* asylum seekers who have credible claims to asylum and present no danger to

9  the community or flight risk.  After the Parole Directive went into effect in January 2010, large

10  numbers of arriving asylum seekers were paroled from detention.  Indeed, ICE touted the Parole

11  Directive as one of its major "Detention Reform Accomplishments."[6]

12          **B. Plaintiffs Seek Information About the Directive and ICE's Role in
              Carrying Out the Directive.**

13

14      Unfortunately, since 2014, ICE has abruptly changed course and returned to its practice of

15  routinely denying parole to asylum seekers, even when they meet the Parole Directive's criteria.

16  For example, in fiscal year ("FY") 2012, ICE reported that 80% of arriving asylum seekers who

17  established a credible fear were granted parole.[7]  However, data obtained pursuant to the

18  settlement in this case shows that in the first five months of 2017, less than 30% of arriving

19  asylum seekers found to have a credible fear and held at an adult detention facility were granted

20  parole—despite no change in the Directive's criteria for release.  In some jurisdictions, 100% of

21  individuals were denied parole.

22      Although ICE has never acknowledged, much less justified, its change in detention policy,

23

24  ─────────────────────
    [3]  https://www.ice.gov/doclib/dro/pdf/11002.1-hd-parole_of_arriving_aliens_found_credible_fear.pdf.
25  [4] *Id*. ¶¶ 6.2, 8.3
    [5] *Id*. ¶¶ 8.4-8.12.
26  [6] *See* ICE, *Detention Reform*, Jan. 2010, https://www.ice.gov/detention-reform#tab1.
    [7] USCIRF, *Special Report: Assessing the U.S. Government's Detention of Asylum Seekers: Further Action Needed to
27  Fully Implement Reforms* 9-10 (Apr. 2013) http://www.uscirf.gov/sites/default/files/resources/
    ERS-detention%20reforms%20report%20April%202013.pdf.
28

1   there is strong evidence that ICE has abandoned the Parole Directive.[8]  In many cases, the agency

2   is not making parole decisions based on an individualized determination of flight risk danger, in

3   violation of asylum seekers' due process rights.  *See Jean v. Nelson*, 472 U.S. 846, 857 (1985);

4   *Marczak v. Greene*, 971 F.2d 510, 515 (10th Cir. 1992); *Diaz v. Schiltgen*, 946 F. Supp. 762, 764-

5   65 (N.D. Cal. 1996).  ICE's shift in detention policy also raises serious fiscal concerns.  The

6   average cost of detention per day in FY 2013 for U.S. taxpayers, not including expenditures

7   toward agency-wide overhead, was $158 per person.  By contrast, the average daily cost of

8   supervision through ICE's alternatives to detention program was $10.55 per person.[9]

9        For these reasons, ICE's arbitrary detention of asylum seekers is a matter of urgent public

10  concern.  Thus, Plaintiffs sought the immediate disclosure of records to ensure a full public

11  accounting of the government's shift in detention policy.

**C.   Plaintiffs Filed Their Complaint After Receiving a Misleading Second Document Production from Defendant and Exhausting Administrative Remedies.**

14       On October 5, 2015, Plaintiffs sent ICE two FOIA requests seeking the disclosure of

15  records pertaining to enforcement of the Parole Directive.  ICE did not provide a final response to

16  Plaintiffs' Request until December 17, 2015—after the statutory deadline for a response.  In

17  addition to being late, that response was inadequate.  ICE produced only three policy-related

18  documents, including a document already publicly available on ICE's website, data for January –

19  September 2015 and not the full range of parole decision data dating back to 2010 as requested,

20  and with no index or glossary to understand acronyms in the data; ICE did not produce quality

21  assurance reports or analyses as requested; and withheld portions of the records claiming FOIA

22  exemptions.  On February 11, 2016, Plaintiffs timely appealed ICE's inadequate search for

23  records and improper invocation of the FOIA exemptions.  Hearing nothing regarding their

24  appeal, Plaintiffs prepared for litigation, including significant time spent drafting a Complaint and

25

---

26  [8] *See generally* Human Rights First, *Judge and Jailer: Asylum Seekers Denied Parole in Wake of Trump Executive Order* (Sept. 2017), available at https://www.humanrightsfirst.org/sites/default/files/hrf-judge-and-jailer-final-report.pdf.

27  [9] U.S. Government Accountability Office, GAO-15-26, *Alternatives to Detention: Improved Data Collection and Analysis Needed to Better Assess Program Effectiveness* 18 (Nov. 2014).

28

1    coordinating with cooperating council at Riley Safer Holmes & Cancila LLP ("RSHC").  On June

2    23, 2016—on the last day ICE could respond to Plaintiffs' appeal to avoid litigation, and the day

3    before Plaintiffs were planning to file their Complaint—ICE provided what they purported to be

4    new data in response to Plaintiffs' request.

5          However, after careful analysis, it became clear that the allegedly "new" data was in fact

6    the *same* information that had been produced in spreadsheet form in December 2015.

7    Nonetheless, multiple members of the litigation team had to cull through ICE's spreadsheets to

8    make this determination, thus requiring additional time preparing for litigation and updating the

9    Complaint.  Moreover, ICE again failed to provide analyses or quality assurance reports as

10   requested, or any index or glossary to the data.

11         On August 22, 2016, Plaintiffs timely appealed ICE's inadequate response and improper

12   invocation of the FOIA exemptions with regards to their data request.  On September 21, 2016,

13   ICE granted Plaintiffs' appeal with respect to the inadequacy of its search for statistical reports,

14   remanding the request once again for re-processing.  After ICE failed to make a determination on

15   remand within the required twenty business days, Plaintiffs filed their Complaint on October 20,

16   2016.

17         Over the course of nearly a year, Plaintiffs engaged with ICE extensively to reach a

18   settlement agreement, which required significant resources and time.  In the course of

19   discussions, after the filing of the instant suit, ICE produced an additional 612 pages of

20   documents and nine additional spreadsheets (eight of which contained new data) in January 2017.

21   Plaintiffs spent a significant amount of time keeping the settlement negotiations on track and took

22   the laboring oar in drafting joint case management statements, settlement negotiation

23   communications, and the ultimate settlement agreement.  After much compromise and discussion,

24   the parties filed a Joint Settlement Agreement that requires ICE to produce all of the data

25   originally requested, including additional data sets covering a broader time period.  That

26   Agreement was submitted on August 7, 2017 (Doc. 56), and was entered on August 9, 2017.

27   Doc. 57.  Per the settlement agreement, ICE agreed to produce data reports for the entire year of

28

1  2017 and a glossary of the codes and acronyms used in those reports.

2      The parties then engaged in negotiations on fees, with both sides offering to significantly

3  compromise their demands and offers.  Despite three months of negotiations, however, the parties

4  are unable to reach an agreement on fees.

5              **D.  Impact of Disclosure of Documents Obtained by Plaintiffs**

6      The data Plaintiffs have obtained through this litigation substantially promote

7  transparency and accountability regarding the government's detention and parole practices—

8  issues of urgent public concern.  Prior to Plaintiffs' FOIA requests and this lawsuit, there was *no*

9  systemic, publicly available data on parole for asylum seekers who establish a credible fear.

10  Moreover, the data specifically will allow the public to assess any changes by the current

11  administration to the parole and detention of asylum seekers, despite the administration's stated

12  position that the Parole Directive remains in full force and effect.  Thus, the data is of critical

13  importance to policymakers, advocates, and scholars of the immigration and asylum system.

14              **E.  Plaintiffs' Counsel**

15      From the inception of this controversy, Plaintiffs have been represented by several highly-

16  qualified attorneys from the ACLU Immigrant Rights Project, CGRS, ACLU of Northern

17  California, and the law firm RSHC.  In a scrupulous effort to bill only for time spent on

18  absolutely necessary activities, Plaintiffs have removed several attorneys and a paralegal from

19  their lodestar, despite the fact that these individuals' work added substantial value to the

20  prosecution of this case.  In particular, Plaintiffs are including only one attorney from the ACLU

21  Immigrant Rights Project, Michael Tan; one attorney from CGRS, Eunice Lee; and one attorney

22  from RSHC, Yakov Wiegmann.  Although their work was critical to the case, Plaintiffs have not

23  included the time billed by the three ACLU of Northern California attorneys who worked on the

24  case, the two associates at RSHC who assisted in the case or the paralegal from RSHC who

25  assisted with the case.[10]  *See* Exhibit A to Wroe Decl.

26

27  [10] Exhibit A to Wroe Decl. includes all billing time for this matter but the lodestar is the sum of the time billed by
Michael Tan, Eunice Lee, and Yakov Wiegmann.  Exhibit B to Wroe Decl. includes only the lodestar time requested

28

Michael Tan, of the Immigrant Rights Project of the ACLU has been practicing civil rights and immigration law since 2008 and is one of the country's legal and policy experts on immigration detention.  Declaration of Michael Tan in support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Litigation Costs ("Tan Decl.") at ¶¶ 1-3.  Eunice Lee, of CGRS has been practicing law or working as a law clerk for more than nine years and is one of the country's experts on the rights of asylum seekers and refugees.  Declaration of Eunice Lee in support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Litigation Costs ("Lee Decl.") at ¶¶ 1-4.  Yakov Wiegmann, a RSHC partner, has been practicing for eleven years and has experience in all phases of civil litigation including pleadings, fact and expert discovery, pretrial practice, trial, and appeal, as well as extensive settlement negotiation experience.  Declaration of Yakov Wiegmann in support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Litigation Costs ("Wiegmann Decl.") at ¶¶ 3-5.  Angélica Salceda, a staff attorney at the ACLU of Northern California, participated in every phase of the litigation, under the supervision of senior staff attorneys with significant FOIA litigation experience.  Ms. Salceda drafted and edited Plaintiffs' Motion for Reasonable Attorneys' Fees and Litigation Costs.  Salceda Decl. at  ¶¶ 1, 3-8.[11] Mishan Wroe, an associate at RSHC, has been practicing civil litigation since October 2013 and drafted and edited Plaintiffs' Motion for Reasonable Attorneys' Fees and Litigation Costs.  Wroe Decl. at ¶¶ 1, 3, 11.

### III.   ARGUMENT

#### A. Plaintiffs are Eligible and Entitled to an Award of Reasonable Attorneys' Fees and Litigation Costs.

The FOIA provides for an award of reasonable attorneys' fees and litigation costs to plaintiffs who have "substantially prevailed" in their FOIA actions.  The applicable statutory language is set out in 5 U.S.C. § 552(a)(4)(E):

---

for Mr. Tan, Ms. Lee, and Mr. Wiegmann.  *See also* Declaration of Angelica Salceda in support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Litigation Costs ("Salceda Decl."), ¶ 7.

[11] In an exercise of billing judgment, Plaintiffs do not seek compensation for the hours spent by ACLU of Northern California attorneys reviewing drafts and consulting on legal analysis and strategy prior to the Settlement Agreement.  *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(i)     The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

(ii)    For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either –

I.     a judicial order, or an enforceable written agreement or consent decree; or

II.    a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

Plaintiffs must demonstrate both eligibility for and entitlement to the award. *Long v. IRS*, 932 F.2d 1309, 1313 (9th Cir. 1991).  Plaintiffs here readily meet both prongs.

**1.   Having Substantially Prevailed, Plaintiffs Are Eligible for a Fee Award.**

Having substantially prevailed in this action, Plaintiffs are eligible for an award of reasonable attorneys' fees and costs under both subsections of § 552(a)(4)(E)(ii).

ICE has, per the settlement agreement entered by the Court, produced documents and additional data regarding 2017 parole decisions.  Per the settlement agreement, ICE will continue to provide data throughout the remainder of the year and until March 2018.  Thus, Plaintiffs have clearly prevailed under § 552(a)(4)(E)(ii)(I).

Plaintiffs also have clearly prevailed under § 552(a)(4)(E)(ii)(II).  Added in 2007, this provision also "authorizes the payment of attorney fees when documents … are recovered using a catalyst theory." *Oregon Natural Desert Assn. v. Locke*, 572 F.3d 610, 612 (9th Cir. 2009); *see also id.* at 614-15 (discussing legislative history).  According to the legislative history:  "Under the bill, a FOIA requester can obtain attorneys' fees when he or she files a lawsuit to obtain records from the Government and the Government releases those records before the court orders them to do so."  153 Cong. Rec. S15701-04 (daily ed. Dec. 14, 2007) (statement of Sen. Leahy, sponsor of the 2007 Amendments).  Defendant's January 2017 production of new data from years 2010, 2011, 2012, 2013, and 2014—encompassing several categories of data for well over 10,000 unique decisions on parole—plus over 600 pages of other responsive documents, was a voluntary change in the agency's position in response to Plaintiffs' substantial claim in the Complaint. Thus, Plaintiffs are eligible for fees under § 552(a)(4)(E)(ii)(II).

**3.   Plaintiffs Are Also Entitled to a Fee Award Based on the Nature of the Records Sought, the Records Obtained, and the Parties Seeking the Records.**

Plaintiffs are also entitled to a fee award.  To determine whether a plaintiff is entitled to an award of attorney's fees and costs under FOIA, the court must consider four factors:  "(1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law."  *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1364 (D.C. Cir. 1977); *see also*, *The Sierra Club v. United States Environmental Protection Agency*, 75 F. Supp. 3d 1125, 1140-42 (N.D. Cal. 2014).  The second and third factors "are closely related" and often evaluated together.  *Fenster v. Brown*, 617 F.2d 740, 743 (D.C. Cir. 1979).

The first public benefit factor weighs overwhelmingly in Plaintiffs' favor.  Courts routinely have found information that illuminates government practices to confer a public benefit. *See, e.g.*, *Playboy Enter. V. U.S. Customs Serv.*, 959 F. Supp. 11, 16 (D.D.C. 1997) (finding public benefit from disclosures that "br[ought] into question the practices and policies of the U.S. [Customs Service] with respect to the seizure of counterfeit goods"); *Judicial Watch, Inc. v. U.S. Dept. of Justice*, 774 F. Supp. 2d 225, 227 (D.D.C. 2011) (same, for disclosures relating to the government's Terrorist Surveillance Program); *Elec. Priv. Info. Ctr. V. U.S. Dept. of Homeland Sec.*, 811 F. Supp. 2d 216, 234 (D.D.C. 2011) (*EPIC*) (same, for information pertaining to whole body imaging technology used in scanners at airports).

As noted *supra*, Plaintiffs have obtained data regarding the detention and parole of asylum seekers that was previously unavailable to the public, including data that will reveal any changes in parole under the current administration.  This data will be critical for policymakers and asylum advocates, as well as scholars researching the asylum and immigration detention system.  This information undoubtedly "further[s] public understanding" on an important topic and is "'likely to add to the fund of information that citizens may use in making vital political choices.'"  *EPIC*, 811 F. Supp. 2d at 234 (internal citations omitted); *see also Jarno v. Dep't of Homeland Sec.*, 365 F. Supp. 2d 733, 738 (E.D. Va. 2005) (granting award of attorneys' fees and finding that "[t]he

1  public benefitted … because the documents requested provided information to the public

2  regarding the Department of Homeland Security's handling of Plaintiff's high-profile political

3  asylum case.").

4      The second and third factors also strongly favor Plaintiffs.  Both Plaintiffs—the ACLU

5  and CGRS—are non-profit organizations with no commercial interest in the documents or data

6  requested.  *See* Tan Decl. at ¶ 11; *see also* Lee Decl. at ¶ 10; *see also EPIC*, 811 F. Supp .2d at

7  235 ("Fee recovery is often appropriate … when the plaintiff is a nonprofit public interest

8  group.")  Additionally, CGRS is motivated by scholarly interests.  Lee Decl. at ¶ 10; *see also*

9  *EPIC*, 811 F. Supp .2d at 235 ("FOIA suits which are motivated by scholarly, journalistic, or

10  public interest concerns are the proper recipients of fee awards.") (internal citations omitted).

11      As to the fourth factor, ICE bears the burden of "show[ing] it had any colorable or

12  reasonable basis for not disclosing the material until after [Plaintiffs] filed suit."  *Davy v. CIA*,

13  550 F.3d 1155, 1163 (D.C. Cir. 2008); *see also The Sierra Club*, 75 F. Supp. 3d at 1145.

14  However, ICE had no basis, let alone a reasonable one, for withholding the data prior to the

15  Settlement Agreement.  *See EPIC*, 811 F. Supp. 2d at 235 (quoting *Davy*, 550 F.3d at 1163) ("[I]t

16  is insufficient for an agency simply to claim that i[t] 'offered no resistance' and quickly

17  responded to a FOIA request upon being subjected to suit.")[12]

18      In sum, Plaintiffs are entitled to attorneys' fees under all four factors.

19  **B.  Plaintiffs' Attorneys' Fees are Reasonable.**

20  **1.  A Summary of Plaintiffs' Claim.**

21      Under FOIA, the determination of whether Plaintiffs' attorneys' fees are reasonable

22  begins with a determination of the lodestar – reasonable hourly rates multiplied by the number of

23  hours reasonably spent.  *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Under federal

24

25  [12] Even if ICE could satisfy its burden of showing a reasonable basis for withholding the documents produced –
which it cannot – Plaintiffs are entitled to fees based on the public benefit criterion. FOIA's legislative history makes

26  clear that "[e]ach criterion should be considered independently, so that, for example, newsmen would ordinarily
recover fees even where the government's defense had a reasonable basis in law, while corporate interests might

27  recover where the withholding was without such basis."  S. REP. NO. 93-854, at 171-72 (1974) (quoted in *Deininger
& Wingfield, P.A. v. I.R.S.*, 2009 WL 2241569 *6 (E.D. Ark. 2009).

28

1   law, there is "a strong presumption that the lodestar represents a reasonable fee." *Gates v.*

2   *Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1975).  In "rare cases, a district court may make

3   upward or downward adjustments to the presumptively reasonable lodestar…." *Id*. at 1402.

4          In the instant case, Plaintiffs calculated their lodestar for the merits of the litigation based

5   on hours of only three attorneys, and are seeking fees for time spent on the fee motion by only

6   two attorneys, despite the significant participation and assistance of several additional billers.  *See*

7   Exhibits A, B, and D to Wroe Decl.  The total lodestar requested for work on the merits is

8   $81,386.50, based on 30.9 hours requested for Mr. Tan's work at a rate of $480/hour, 64.1 hours

9   requested for Ms. Lee's work at a rate of $545/hour, and 62 hours requested for Mr. Wiegmann's

10  work at a rate of $510/hour.  *See* Wroe Decl. at ¶ 8 and Exhibit B to Wroe Decl.[13]  Excluded from

11  the lodestar are 82.5 hours by one paralegal and two associates at RSHC and 36 hours by

12  attorneys at the ACLU of Northern California.  *See* Wroe Decl. at ¶ 8 and Exhibit A to Wroe

13  Decl.  On the fee motion, Plaintiffs intend to seek hours spent by Ms. Wroe, one of the RSHC

14  associates, and Ms. Salceda, one of the ACLU of Northern California staff attorneys.  *See* Wroe

15  Decl. at ¶ 11 and Exhibit D to Wroe Decl.

16         Plaintiffs' litigation costs, totaling $1,102.92, include the court filing fee, service of

17  process fees, and chambers' copy delivery fees, and are fully recoverable.  *See* Wroe Decl. at ¶ 10

18  and Exhibit C to Wroe Decl.; *see also* 5 U.S.C. § 552(a)(4)(E)(i) (court "may assess … other

19  litigation costs reasonably incurred"); *Kuzma v. IRS*, 821 F.2d 930, 932 (2d Cir. 1987).

20         Plaintiffs also are entitled to their fees for this motion.  *See*, *e.g., Davis v. City & County*

21  *of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992); *Read v. FAA*, 252 F. Supp. 2d 1108, 1113

22  (W.D. Wash. 2003).  The total lodestar requested for fees associated with this motion (to date) is

23  12.9–comprised of 10.9 hours spent by Ms. Wroe at a rate of $365/hour and two hours spent by

24  Ms. Salceda at a rate of $345/hour – to be supplemented for additional work on reply.  That figure

25

---

[13] Although statutory fees are normally based on current rates, fees against the federal government must be based on
"historical" rates.  *See, e.g., Save Our Cumberland Mtns., Inc. v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988).
Accordingly Plaintiffs' ACLU attorneys have requested 2016 rates for their work performed in 2016.  In the exercise
of billing judgment, they have not increased their rates for work performed in 2017, even though rates generally have
risen.  *See* Wroe Decl. at ¶ 12 and Exhibits A, B and D to Wroe Decl.

26

27

28

-11-        3:16-cv-06066-JSC

1    also is eminently reasonable.

2    **2.  Plaintiffs' Lodestar is Reasonable.**

3    **a.  Counsel's Hourly Rates are Reasonable.**

4    Under federal fee-shifting law, Plaintiffs' counsel are entitled to the hourly rates they have

5    requested if those rates are "in line with" the rates charged by attorneys of reasonably comparable

6    experience, expertise, and skill for reasonably comparable work.  *See Blum v. Stenson*, 465 U.S.

7    886, 895 n.11 (1984).  The fair market value of the work performed sets the measure, as

8    determined by the rates charged by commercial firms for reasonably similar federal litigation.

9    *Davis*, 976 F.2d at 1547, *affirming United States v. City & County of San Francisco*, 748 F. Supp.

10   1416, 1431 (N.D. Cal. 1990) (plaintiff's non-profit attorneys entitled to rates charged by

11   "corporate attorneys of equal caliber").

12   Plaintiffs' counsel's rates here are well "in line with" the rates charged by San Francisco

13   (and New York, in the case of Mr. Tan) attorneys of reasonably comparable experience and

14   qualifications for reasonably comparable work.

15   Mr. Tan's $480/hour rate reflects his more than nine years of experience since graduating

16   from Yale Law School in 2008, including a clerkship with the Honorable M. Margaret McKeown

17   on the U.S. Court of Appeals for the Ninth Circuit.  He joined the ACLU Immigrants' Rights

18   Project in 2008 and returned in 2010, where his practice has focused on litigation and advocacy

19   regarding due process in the immigration detention system.  Mr. Tan is one of the country's top

20   experts on immigration detention issues and has successfully litigated and resolved numerous

21   FOIA requests regarding immigration detention.  *See, e.g.*, *ACLU v. DHS*, No. 11-CV-3786, 2013

22   WL 6912685 (S.D.N.Y. Dec. 19, 2013).  Mr. Tan has been recognized repeatedly for his work on

23   detention issues—in 2014 as a California Lawyer of the Year; in 2016 as a Best Lawyer Under 40

24   by the National Asian Pacific American Bar Association; and in 2017 as a Best Lawyers Under

25   40 by the National LGBT Bar Association. *See* Tan Decl. at ¶¶2-3, 5-6.  Given his impeccable

26   credentials and experience, and the quality of the work performed, the 2016 rate requested for Mr.

27   Tan's work is perfectly reasonable.

28

1   Ms. Lee's $545/hour rate reflects her more than eleven years of experience since

2   graduating from Yale Law School in 2006, including a clerkship with the Honorable Carlos F.

3   Lucero of the U.S. Court of Appeals for the Tenth Circuit, three years as an Equal Justice Works

4   Fellow and then Detention Attorney at the ACLU Immigrants' Rights Project, and two years as

5   the Albert M. Sacks Clinical Teaching and Advocacy Fellow at Harvard Law School's

6   Immigration and Refugee Clinical Program.  In 2014, she joined UC Hastings College of the Law

7   CGRS, where her practice has focused on the rights of refugees and asylum seekers, including

8   those in immigration detention, and where she now serves as co-Legal Director.  *See* Lee Decl. at

9   ¶¶ 2-3, 5-9.  Given her impeccable credentials and experience, and the quality of the work

10  performed, the 2016 rate requested for Ms. Lee's work is perfectly reasonable.

11  Mr. Wiegmann's $510/hour rate reflects his eleven years of experience in all phases of

12  civil litigation including pleadings, fact and expert discovery, pretrial practice, trial, and appeal –

13  as well as extensive settlement negotiation experience – since graduating from UC Hastings

14  College of the Law in 2006.  In 2016, he became a founding partner of RSHC, where his practice

15  has emphasizes product liability, catastrophic personal injury, and commercial litigation.  *See*

16  Wiegmann Decl. at ¶¶ 3-8.  Over his career, Mr. Wiegmann has played a key role in resolving

17  hundreds of civil disputes through settlement, dispositive motions, trial, and appeal.  *Id.* at ¶ 5.

18  Mr. Wiegmann is an Adjunct Professor of Law at UC Hastings, where he teaches Civil Pretrial

19  Practice.  *Id.* at ¶7.  Given his impeccable credentials and experience, and the quality of the work

20  performed, the 2016 rate requested for Mr. Wiegmann's work is perfectly reasonable.

21  Ms. Wroe's $365/hour rate reflects her more than four years of litigation experience since

22  graduating from the University of Chicago Law School in 2013.  *See* Wroe Decl. at ¶ 3.  Given

23  her impeccable credentials and experience, and the quality of the work she performed, the 2016

24  rate requested for Ms. Wroe's work is perfectly reasonable.

25  Ms. Salceda's $345/hour rate reflects her more than three years of litigation experience

26  since becoming a member of the California bar in 2014 and her substantial experience litigating

27  cases involving immigrants' rights.  *See* Salceda Decl. at ¶ 3.

28

**b.   The Number of Hours Claimed is Reasonable.**

Under federal law, successful Plaintiffs' counsel are entitled to be compensated for every hour reasonably spent to vindicate their clients' interests:  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally, this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award fee may be justified."  *Hensley*, 461 U.S. at 435.  Having achieved excellent results here, Plaintiffs' counsel are entitled to just such a fully compensatory fee.

Time is reasonably spent and thus compensable if the work is reasonably directed to achieving the client's goals, even if it does not produce a favorable result.  *See Balla v. State of Idaho*, 677 F.3d 910, 920-21 (9th Cir. 2012) (fees "directly and reasonably incurred" where attorneys "work was what one would expect of a lawyer working for a client that could afford its efforts but that was not indifferent to the cost"); *Coordinated Pretrial Proceeding v. Exxon Corp.*, 109 F.3d 602, 608 (9th Cir. 1997) ("Good legal representation regularly includes some work which does not bear fruit").

Once the plaintiff has presented a fully-documented claim, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits."  *Gates*, 987 F.2d at 1397-98.  Defendant's burden is to show that "the time claimed is obviously and convincingly excessive under the circumstances."  *Perkins v. Mobile Housing Board*, 847 F.2d 735, 738 (11th Cir. 1988).

**i.   Plaintiffs' hours are fully-documented and appropriate to the work completed.**

The hours for which compensation is requested are modest and eminently reasonable for a case of this importance.  Several factors support Plaintiffs' request.  First, Plaintiffs' claim is fully documented by detailed, contemporaneous time records showing when and how each tenth of an hour was spent.  Exhibits A, B and D to Wroe Decl.; *See Perkins*, 847 F.2d at 738 (counsel's "sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the

issue of the time required in the unusual case").  Second, Plaintiffs' counsel staffed this case

efficiently, particularly considering there are two Plaintiffs organizations staffed by attorneys as

well as cooperating counsel.  Each Plaintiff has its own sets of priorities and concerns regarding

the lawsuit and therefore needed to be involved in the litigation fully.  Moreover, much of the

billing time was a result of ICE's own doing – in supplying supposedly new data that was, in fact,

the same data previously produced.  Only time that is "unnecessarily" duplicative is non-

compensable.  *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1113 (9th Cir. 2008) ("It is only

where the lawyer does *unnecessarily* duplicative work that the court may legitimately cut the

hours.") (emphasis in original).  No such "duplication" occurred here.  Third, Plaintiffs have

conscientiously exercised billing judgment, writing off all time that was marginally non-

compensable and eliminating hours to avoid duplication.  Wroe Decl. ¶ 13.  Finally, this case was

hard-fought.  ICE heavily resisted providing data and the codes such that the data could be

analyzed in a useful way.  Any lesser effort by Plaintiffs' counsel might well have jeopardized the

Plaintiffs' rights.  *See Guam Soc. Of Obstetricians and Gynecologists v. Ada*, 100 F.3d 691, 700

(9th Cir. 1996).

### ii.   Plaintiffs are entitled to a fully compensatory fee.

Finally, the success Plaintiffs achieved justifies a fully compensatory fee.  Plaintiffs have

substantially prevailed this case, obtaining key documents after months of negotiations.  *See*

*supra* III. A. 2.  "[A] plaintiff does not need receive all the relief requested in order to show

excellent results warranting the fully compensatory fee."  *Dang v. Cross,* 422 F.3d 800, 813 (9th

Cir. 2005) *citing Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001).  Indeed, *Hensley*

expressly recognizes that Plaintiffs need not achieve every form of relief sought to recover a fully

compensatory fee.  461 U.S. at 435 n. 11.

Here, all of Plaintiffs' claims were "related," obviating the need for any reduction due to

"unsuccessful claims."  *See, e.g., Dang,* 422 F.3d at 813 ("'[C]laims are *unrelated* if the

successful and unsuccessful claims are "distinctly different" *both* legally *and* factually; claims are

related, however, if they 'involve a common core of facts *or* are based on related legal theories.'"

-15-        3:16-cv-06066-JSC

(internal citations omitted; emphasis in original).  Plaintiffs' document requests all involved the

same legal theories and a common course of conduct by ICE's efforts regarding the Parole

Directive.

Moreover, the issue raised by Plaintiffs' lawsuit here is critically important in the ongoing

national debate about immigration and the treatment of asylum seekers.  ICE's arbitrary detention

of asylum seekers, in violation of its own policy directives, is a matter of urgent public concern.

The settlement agreement gives Plaintiffs nearly everything they originally sought, plus an entire

year and a half of additional data.  By any standard, these are excellent results warranting a fully

compensatory fee.

## IV.   CONCLUSION

Plaintiffs' attorneys have performed precisely the service that Congress intended to

promote when it enacted FOIA's attorneys' fee provision.  For the foregoing reasons, Plaintiffs

respectfully request that they be awarded their reasonable attorneys' fees and litigation costs as

set forth herein, as well as those fees and costs incurred subsequently on this motion.


Dated: November 13, 2017                    Riley Safer Holmes & Cancila LLP

                                            By: */s/ Yakov P. Wiegmann*
                                            Yakov P. Wiegmann (CSB # 245783)
                                            ywiegmann@rshc-law.com
                                            Mishan R. Wroe (CSB # 299296)
                                            mwroe@rshc-law.com
                                            456 Montgomery Street, 16th Floor
                                            San Francisco, California 94104
                                            Telephone:(415) 275-8550
                                            Facsimile: (415) 275-8551

                                            AMERICAN CIVIL LIBERTIES UNION
                                            FOUNDATION OF NORTHERN
                                            CALIFORNIA
                                            Julia Harumi Mass (CSB # 189649)
                                            jmass@aclunc.org
                                            Angélica Salceda (CSB # 296152)
                                            asalceda@aclunc.org
                                            39 Drumm Street
                                            San Francisco, California 94111
                                            Telephone:(415) 621-2493
                                            Facsimile: (415) 255-8437

AMERICAN CIVIL LIBERTIES UNION
IMMIGRANTS' RIGHTS PROJECT
Michael Tan (NY Reg No. 4654208)
mtan@aclu.org
125 Broad Street, 18th Floor
New York, NY 10004
Telephone:(347) 714-0740
Facsimile: (212) 549-2654

CENTER FOR GENDER & REFUGEE
STUDIES AT THE UNIVERSITY OF
CALIFORNIA HASTINGS COLLEGE OF
THE LAW
Eunice Lee (NY Reg No. 4607859) *
leeeunice@uchastings.edu
Moira Duvernay (CSB # 233279)
duvernaym@uchastings.edu
200 McAllister Street
San Francisco, California 94102
Telephone: (415) 581-4877
Facsimile: (415) 581-8824

*_Pro Hac Vice_ Application Granted

_Attorneys for Plaintiffs_
AMERICAN CIVIL LIBERTIES UNION
IMMIGRANTS' RIGHTS PROJECT and
CENTER FOR GENDER & REFUGEE
STUDIES AT THE UNIVERSITY OF
CALIFORNIA HASTINGS COLLEGE OF
THE LAW

4841-9307-1699, v. 5

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
REASONABLE ATTORNEYS' FEES AND LITIGATION COSTS